Brewster, J.
(dissenting in part). I concur in the decision about to be made except as to its affirmance of that part of the final order which vacated the assessment upon relator’s occupation designated as St. Mary’s Park Tunnel.
Neither of the grounds assigned for the cancellation of this assessment appears to me to be valid. I think a difficulty met with concerns the definition and an identification of just what it is which, under the Tax Law, is deemed a special franchise for the purposes of taxation. The definitive words of the statute (Tax Law, § 2, subd. 6), applicable here, are, “ * * * all railroad structures * * * permitted or authorized to be * * * placed * * * under any public * * * ground * # This, of course, implies that the permission or authorization be from public authority. The statute then says: “ A franchise, right, authority or permission [so] specified * # * ” is “ a ' special franchise. ’ ” A special franchise is, therefore, to be distinguished from the property and property rights acquired by the grantee, or franchise holder, by virtue of its ownership created by the grant, or by the exercise of the privilege. (See 23 Am. Jur., Franchise, § 2, p. 716.) What the relator’s lessor gave up as a price paid for its grant from the city does not determine the character of what it received. What it parted with, viz.: the fee of its old location, and this in part, at least, for a money consideration, was also accompanied by an agreement to relocate and maintain its railroad in the public service at the new location. But .this was only what induced the grant of the right to occupy space under a public place for the corporate purpose. It was merely what brought “ into existence ” the bestowal of the intangible, invisible right to do business at that place. (People ex rel. Met. St. R. R. Co. v. Tax Comrs., 174 N. Y. 417, 437, 448.) The claim that the surrender of a location, nontaxable as a special franchise, *741 precludes such taxation as to a substituted location under a public place, was rejected in People ex rel. N. Y. C. & H. R. R. R. Co. v. Tax Comrs. (179 App. Div. 489, affd. 222 N. Y. 542).
We may concede that what the city granted was an appurtenant easement for the duration of 'the grantee’s corporate existence, but however analyzed and classified, it seems to me that there is an ever present ingredient therein" of a governmentally bestowed intangible right to occupy a public place which comes within the statutory definition of a special franchise. For, the easement, or whatever what was granted may be termed, could only be operative because of the governmentally exercised bestowal of the intangible right, the continuing source of its existence. The grant was in exercise of a jus publicum, “ either in derogation of the public right, or as sharing in or by virtue of the public right ” (People ex rel. Manhattan R. R. Co. v. Tax Comrs., 203 N. Y. 119,129). This defines a special franchise. Except for the “ specialty ” of the permission, the use of what was granted would have been unlawful and a trespass. This, too, defines a special franchise. (People ex rel. N. Y. C. & H. R. R. R. Co. v. Gourley, 198 N. Y. 486; People ex rel. Metropolitan St. R. R. Co. v. Tax Comrs., 174 N. Y. 417, supra; People ex rel. N. Y. C. & H. R. R. R. Co. v. Priest, 206 N. Y. 274, 297; People ex rel, N. Y. C. & H. R. R. R. Co. v. Woodbury, 206 N. Y. 304.) What was conveyed to the relator were rights and privileges that were sui generis, and which could not be exercised without express permission -from a sovereign power. This also defines a special franchise. (23 Am. Jur., Franchise, § 2; People ex rel. Metropolitan St. R. R. Co. v. Taco Comrs., supra.) The identity of the special franchise appears when the distinction is made between the right to do a thing under the specially granted privilege and the ownership of what was acquired by the exercise of the right — viz.: a distinction between the bare jus utendi of the “ perfect usufruct ” and its jus fruendi.
As to the matter of a legislative intention to grant an exemption when it enacted the statute which authorized the plan in pursuance of which the grant under consideration was made, the argument seems to be this: that since it was necessarily envisioned that the relator’s lessor was to give up a location which was not and never had been subject to special franchise taxation, and was to accept one which would be, an exemption *742 therefrom was intended. It is to be noted that the grant by the city is dated December 24, 1903; that it was made in pursuance of chapter 424 of the laws of that year, and that special franchise taxation in this State had originated shortly before by chapter 712 of the Laws of Í899, the constitutionality of which had been upheld and various of its features determined only as recently as April, 1903. (People ex rel. Metropolitan St. R. R. Co. v. Tax Comrs., supra.) Thus that in such entirely new and unique field of taxation, which had been found and for the first time utilized only shortly before, the Legislature had in mind to exempt this particular special franchise for the existence of which it prepared the way by its 1903 enactment, is to me inconceivable. Doubtless there were many considerations which induced the relator’s lessor to make the exchange which have not been shown in the proofs. But however that may be, there is nothing in the statutory language, much less in any of the proofs, which to my mind, is sufficient to justify our pronouncement of any such unexpressed legislative intention. Especially is this so in the light of the rule that, “ Taxation is the rule, with every presumption to support it, while exemption is an exception, with every presumption against it. ’ ’ (People ex rel. Metropolitan St. R. R. Co. v. Tax Comrs., supra, p. 448.)
The final order should be further modified by reversing that part thereof which vacates the special franchise assessment on relator’s St. Mary’s Park Tunnel location. ,
Hill, P. J., Foster and Russell, JJ., concur with Heeeernan, J.; Brewster, J., dissents, as to St. Mary’s Park Tunnel, in an opinion.
Decision of the referee modified on the law as indicated in the opinion herein, and as so modified, affirmed, without costs to either party.
The court reverses and annuls conclusions of law numbered 34 and 35 as to Third Avenue insofar as they sustain the legality of that assessment.
The court adopts the following conclusion of law with respect to Third Avenue: Relator is not estopped from contesting the legality of that assessment. Relator is a prior occupant at Third Avenue and not subject to a special franchise assessment. It is entitled to a refund of the taxes paid thereon.